**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **CARRIE DOWNS** § | |
| § | |
| V. § | **CIVIL ACTION NO. 2:05-CV-176** |
| § | |
| **JO ANNE B. BARNHART,** § | |
| **COMMISSIONER OF** § | |
| **SOCIAL SECURITY** § | |

## MEMORANDUM ORDER

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains his proposed findings of fact and recommendations of law for the disposition of such action has been presented for consideration.

## REPORT AND RECOMMENDATION

On October 10, 2006, the Magistrate Judge issued a Report and Recommendation in the above-entitled and numbered social security cause of action, recommending the case be affirmed. On October 13, 2006, Plaintiff filed objections to the Magistrate Judge's recommendation that her social security cause of action be affirmed. The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## PLAINTIFF'S OBJECTIONS

Specifically, Plaintiff asserts the Report and Recommendation fails to find there is not substantial evidence to support the Commissioner's decision that (1) Plaintiff is not fully credible regarding her complaints of pain; (2) Plaintiff's residual functional capacity and Plaintiff's ability to perform other jobs in the national economy; and (3) Plaintiff's mental impairment does not significantly erode her residual functional capacity.

## THE ALJ'S FINDINGS

At the September 16, 2003 hearing, the ALJ specifically found that he could not make a final evaluation of the claimant without an internal medicine CE with breathing test and a physical assessment.  Tr. 390.  Dr. Murthi, the medical expert testifying at the hearing, opined that, on the current record, the claimant's exertional limitations would allow her to lift frequently about ten pounds and occasionally 20 pounds.  Tr. 399-400.  Dr. Murthi opined that the claimant could stand and walk six hours out of an eight-hour period and sit about six hours in an eight-hour period.  Tr. 400.  Dr. Murthi also opined that an environmental limitation of avoiding dust, fumes, and chemical irritants was probably in order due to the claimant's bronchitis.  *Id.*  However, Dr. Murthi acknowledged that the severity of the claimant's bronchitis and her breathing limitations were still in need of evaluation through the breathing test.  *Id.*  He further noted that his opinions on the claimant's limitations could change depending on further testing.  Tr. 401.

On November 13, 2003, following the hearing, the claimant was referred by the Texas Rehabilitation Commission Disability Determination Services to C. Yates Morgan, Ph.D. & Associates for a psychological examination, IQ and standardized achievement testing, MMPI, and mental status evaluations.  Tr. 242-47.  Dr. Yates diagnosed the claimant as having Major Depression, Moderate, Recurrent; Borderline Intellectual Functioning; Pain Disorder Associated with a General Back Pain (Provisional) injury, bronchitis, sinusitis, and numerous infections by medication record; financial, vocational; and assessed her current GAF[1] and highest GAF past year as 51.

---

[1] GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  *See Boyd v. Apfel*, 239 F.3d 698, 699 n.2 (5th Cir. 2001).

Donna Schuyler, Ph.D., also of C. Yates Morgan, Ph.D. & Associates, noted in the "Medical Source Statement of Ability to do Work-Related Activities (Mental)" that, because of the claimant's borderline intellectual function, she would have moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, and the ability to make judgments on simple work-related decisions. Tr. 246. Further, because of her moderate depression, Dr. Schuyler noted that the claimant would have slight limitations in interacting appropriately with supervisor(s), co-workers, and in responding appropriately to work pressures in a usual work setting or to changes in a routine work setting. Tr. 247.

On November 24, 2003, the claimant presented to Wadley Regional Medical Center for x-rays of her lumbar spine. Tr. 250. The records indicated findings of moderate superior end plate compression deformity of L2 with associated kyphosis. *Id.* The records note: "Impression: Stable moderate compression deformity of L2. No change from prior study." *Id.* Also, on November 24, 2003, the claimant had x-rays of her chest taken. The findings indicate a few scattered granulomatous calcifications are seen, the lungs are otherwise clear, and the heart size and pulmonary vasculature are within normal range. Tr. 249. The impression was a "stable chest." *Id.*

On November 24, 2003, Vic Patel, M.D., a specialist in internal medicine who Plaintiff was also referred to following the ALJ hearing by the Texas Rehabilitation Commission Disability Determination Services, completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)." Tr. 251. Utilizing the x-rays above, and upon his own examination, Dr. Patel noted that Plaintiff complains of chronic, severe back pain; however, he found that her findings are not consistent with her symptoms. Tr. 253. Dr. Patel noted that Plaintiff had a stable gait and was able to get on and off the examination table without much difficulty. Tr. 253. Dr. Patel found most

of Plaintiff's problems are psychiatric and related to obesity, although he did attribute some discomfort related to the L2 fracture. Tr. 253.

Dr. Patel noted the following exertional limitations: Occasionally lifting/carrying 20 pounds; frequently lifting/carrying less than 10 pounds. Tr. 251. Dr. Patel noted no limitations in standing and/or walking or sitting. Tr. 251-52. He noted postural limitations in climbing, balancing, kneeling, crouching, crawling, and stooping, but noted no environmental limitations. Tr. 252-54.

In making his findings,[2] the ALJ referred to and relied on the Medical Source Statements in November, 2003, as to the claimant's physical and mental limitations. Tr. 15-17. In fact, the ALJ specifically referred to the claimant's performance on the MMPI, specifically the GAF of 51, as possibly indicating exaggerations and thus gave the examiner's report little weight. Tr. 17. The ALJ further referred to the post-hearing physical exam, performed in November, 2003, and concluded that claimant's ability to walk and get on/off the exam table were not consistent with her complaints. Tr. 18.

The record contains the claimant's observations and objections regarding the above exams. Tr. 141-42. The complaint complained that the doctor rushed her though the examination and did

---

[2]The ALJ found that, during the period under consideration, Plaintiff was a "younger individual between the ages of 18 and 44." Tr. 20. The ALJ found that Plaintiff had no transferrable skills from her past relevant work and/or transferability of skills is not an issue in this case. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. Tr. 19.

   The ALJ found that Plaintiff's lumbar disc disease, status post healed old compression fracture, Depression and Borderline Intellectual Functioning to be "severe," but found that such impairments were not severe enough to meet the Listing of Impairments in the regulations. *Id*. The ALJ found Plaintiff's allegations regarding her limitations to be not totally credible. Tr. 20. The ALJ found that Plaintiff is unable to perform her past relevant work. *Id*.

   Instead, the ALJ found that Plaintiff has the residual functional capacity to perform the demands of light work, reduced by a requirement that Plaintiff not be exposed to dust, fumes, or pulmonary irritants. *Id*. The ALJ specifically found that Plaintiff can stand/walk for up to six hours a day. *Id*. Using Medical-Vocational Rule 202.17, the ALJ reached a finding of not disabled. *Id*. Further, using Rule 202.17 as a framework for decision-making, the ALJ found Plaintiff could perform a significant number of jobs in the national economy. *Id*. Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id*.

not even attempt to conduct a thorough examination, as contemplated by the ALJ. Tr. 142. She claimed that the examiner's report that she needed no assistance in getting off the examination table was false in that he had to assist her to an upright position. *Id.* Further, the record contains a Request for Review of Hearing Decision/Order, requesting that the claimant be afforded a supplemental hearing with the opportunity to cross-examine the doctor and psychologist who reported post-hearing. Tr. 8. Further, the record contains another letter from the claimant's attorney, renewing his request for the opportunity to cross-examine the doctors who performed the post-hearing examinations and reports. Tr. 140.

On January 28, 2005, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision that the claimant was not disabled within the meaning of the meaning of the Social Security Act became the final decision of the Commissioner.

## POST-HEARING CROSS-EXAMINATION

Before an ALJ may rely on a post-hearing vocational expert or medical report to deny a claim, due process requires that the claimant be afforded not only an opportunity to comment on the report and present evidence in rebuttal, but also an opportunity to cross-examine the author of the report to the extent necessary for the full presentation of the claim. *White v. Sullivan*, 1990 WL 115866, at *5 (M.D. La. July 18, 1990). Merely providing the claimant with a copy of the report does not satisfy due process requirements. The ALJ must reopen the hearing for that purpose if requested to do so. *Kelly v. Chater*, 952 F. Supp. 419 (W.D. Tex. 1996); *White v. Sullivan*, 1990 WL 115866 (M.D. La. July 18, 1990). Where an error of law has been made that might have affected the disposition of the case, the Court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. *White*,

1990 WL 115866, at *4 (M.D. La. July 18, 1990) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)).

In the instant case, the Commissioner relied upon this post-hearing report, over the claimant's objection and despite her counsel's repeated requests to conduct oral cross-examination of the expert and to present rebuttal evidence. This action constituted a prejudicial legal error which deprived the claimant of procedural due process. Accordingly, this matter must be remanded for further proceedings, including full in-hearing cross-examination of the medical experts and an opportunity to present rebuttal evidence.

## CONCLUSION

Accordingly, for the foregoing reasons, the matter is REMANDED for additional review consistent with the ruling of this Court.

**SIGNED this 27th day of February, 2007.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE